## EMMA L. REDDEN ET AL.

### V.

## GEORGE H. POTTER, TRUSTEE, ET AL.

1. FRAUDULENT CONVEYANCE.—The court is of opin'on that the transaction with reference to R's interest in the estate was contrived for the purpose of hindering and delaying the collection of the debts in question, and that while the title to the property was transferred from R, it was understood that she retained a secret interest in the property and its proceeds.

2. WHEN COMPLAINANT MAY PROCEED BY BILL WITHOUT ISSUING EXECUTION.—The complainant may proceed at once by bill to remove a fraudulent incumbrance out of his way without waiting to issue an execution, where he has a judgment capable of being enforced, that may be made operative *in præsenti*.

3. PARTIES.—Where the fraudulent grantee conveys a portion of the real estate to third parties, before the filing of the bill, and such persons are not made parties to the bill, it is error to decree a sale of all the real estate in question.

4. CHANCERY.—Where certain relief is not specifically prayed by the bill, and there is not such a case made by the bill as would justify such relief under the general prayer, it is error to decree it.

5. FRAUDULENT CONVEYANCE BY DEBTOR—EXEMPTION.—Where the debtor makes a fraudulent conveyance of his property for the purpose of placing it beyond the reach of his creditors, the right to exemption in such property is not extinguished.

APPEAL from the Circuit Court of Gallatin county; the Hon. T. S. CASEY, Judge, presiding. Opinion filed April 6, 1885.

Mr. A. D. DUFF, for appellants.

Mr. CARL ROEDEL, Mr. E. D. YOUNGBLOOD and Mr. WM. G. BOWMAN, for appellees, cited Weightman v. Hatch, 17 Ill. 281.

As to right to exemption where fraudulent conveyance is made: Gutzler v. Saroni, 18 Ill. 511; Cassell v. Williams, 12 Ill. 387; Bump on Fraudulent Conveyances; Brockett v. Watkins, 21 Wend. 68; Cox v. Shropshire, 25 Tex. 113.

The complainant may have such relief, under the prayer for general relief, as the statement of the case entitles him to ask: Sopham v. Columbine, Taml. 135; Meller v. Mirret, Taml. 487; Cook v. Martin, 2 Atk. 3; Johnson v. Johnson, 1 Munf. 549; Hobson v. McArthur, 16 Peters, 182; Smith v. T. D. Falls Co., 3 Green's Ch. R., N. J. 510.

WALL, J. This was a bill in equity filed by appellees against appellants and other defendants in the Circuit Court of Gallatin county.

The bill charged that appellees were judgment creditors of Fannie J. Riblett; that for the fraudulent purpose of hindering and delaying the collection of the debts due to appellees, and before the rendition of their judgments, the said Fannie J. Riblett conveyed all her interest in the real estate of her deceased father to her sisters, Emma L. Redden and Hattie S. Rowan, who, with their respective husbands, were made parties defendant; that there was no consideration for said conveyance and that the sole object of it was to defraud the appellees and delay them in the collection of their said debts. The bill further alleged that said Fannie J. Riblett purchased from defendants, Emma L. Redden and Joseph W. Redden, lots 1161 and 1162 in the city of Shawneetown, but for the purpose of defrauding the appellees, the deed was made to Frank Riblett, the minor child of said Fannie J. Riblett.

Redden v. Potter.

The bill prayed that these lots and the lands first mentioned should be declared subject to the payment of the judgments aforesaid and that the conveyances referred to should be held null and void as against the appellees.

Answers were filed denying the allegations of fraud; averring that the conveyance from Mrs. Riblett was upon a valuable consideration and in good faith; that as to the city lots in Shawneetown, the purchase was made by Mrs. Riblett at the price of $4,000, of which sum there was a cash payment of $3,000, and that the balance remains unpaid; that the cash payment was made with the money of Mrs. Riblett, and that the deed was given to the minor son at the instance of the husband of Mrs. Riblett. The defendant Emma L. Redden, alleged that there was no fraudulent intent upon her part in the transaction with reference to these city lots, and asked that her lien for the balance of purchase money be preserved in the decree, and filed her cross-bill asking for affirmative relief in this respect.

Mrs. Riblett also interposed a claim of homestead, as to these lots, and asked that the same should be preserved, subject only to the rights of Mrs. Redden.

The cause was heard by the court, and a final decree was entered according to the prayer of the bill, annulling the conveyance of the interest of Mrs. Riblett in her father's estate, and directing that the lands which are situate in the counties of Gallatin, White and Hamilton, be sold, upon executions to be issued to the respective sheriffs of these counties, and that the proceeds should be applied to the payment of the said judgments; that the city lots in Shawneetown should be sold, and out of the proceeds should be paid first, to Mrs. Redden, $1,745.77, the amount due on her note for purchase money and for taxes paid by her upon the property; secondly, to Mrs. Riblett, $1,000 for her homestead exemption estate in said property, and that the residue should be applied on the said judgments, and that the costs should be paid by Emma L. Redden and Hattie S. Rowan. From this decree an appeal has been prosecuted by J. W. and E. L. Redden and by L. and H. S. Rowan. Errors and cross-errors have been assigned,

and although elaborate arguments have been presented upon various points, we will confine our attention to such only as seem necessary to be considered at this time.

It is urged by appellants that the evidence fails to sustain the allegations of fraud and that for this reason the decree should be reversed.   We have examined the record with care and we are not prepared to say that the finding of the circuit court was erroneous in this respect.

Conceding all that is to be said in favor of the appellants, and applying the rules of presumption and construction, as they are stated by counsel, we are inclined to believe that the transaction, with reference to the interest of Mrs. Riblett in her father's estate, was contrived for the purpose of hindering and delaying the collection of the debts in question, and that while the title to the proj erty was transferred from her, it was understood that she retained a secret interest in the property and its proceeds; that this was understood by all concerned, and that, as against the complainant in the bill, the whole transaction was null and void.   Moore v. Wood, 100 Ill. 454; Bump on Fraudulent Conveyances, 470, 471.

Appellants also object that the judgments in question, having been rendered in Gallatin county, were not liens upon the lands in White and Hamilton, until the levy of executions in those counties; that, as shown by the record, levies were made in the counties in the order named, and that it was erroneous to provide in the decree that executions might issue to all the counties simultaneously, and that it would result that sales might be made in all the counties at once, thus producing much confusion and injustice to the rights of the parties.   We do not understand the decree to be subject to the objection urged.   The effect of the decree is simply to remove the incumbrance out of the way of the executions, and to authorize such proceedings under the executions as would have been justified by law had the incumbrance never existed.

It appears from the record that the executions of Hamilton county were issued by the sheriff before the filing of the bill but were not levied until one day after the bill was filed.   It is therefore insisted that the judgments were not

liens upon the lands in Hamilton county when the bill was filed, and that it was error to subject those lands to the operation of the judgments under this decree. In support of this view we are referred by counsel to Newman v. Willitts, 52 Ill. 98, and Weis v. Tiernan, 91 Ill. 27.

It is true that in these cases the Supreme Court say, that the complainant must have a lien upon the land, otherwise the fraudulent conveyance has done him no harm, and there is nothing of which he can reasonably complain; but this expression must be considered with reference to the peculiar state of facts then before the court. In each of those cases the judgment was inoperative because no execution had been issued within a year from its date, and, as was said in the case of Newman v. Willetts, *supra*, the presumption of law was that the judgment was paid, and that to enable the complainant to issue an execution the judgment would necessarily have to be revived by *scire facias.* In the same opinion the court refers approvingly to Weightman v. Hatch, 17 Ill. 281, and quote somewhat at length the doctrine as there laid down. In the latter case the court say, that where a creditor seeks to satisfy his debt out of some *equitable* estate of the defendant which is not liable to levy and sale under execution at law, he must exhaust his legal remedy by judgment and execution returned *nulla bona* before he can ask the aid of chancery to reach the equitable estate of the defendant; that such a proceeding may be strictly termed a creditor's bill, but that there is another sort of creditor's bill very nearly allied to it where the complainant need not go so far before coming into chancery, and that is where he seeks to remove a fraudulent incumbrance out of the way of his execution. There he may file his bill as soon as he obtains judgment.

In that case the decree upon which the complainant relied was rendered in Pike county, and he alleged in his bill that he had caused an execution thereon to be issued to Tazewell county, where the lands in question were situate, and levied on those lands, and he sought to have removed a fraudulent conveyance which had been made by the defendant. It was urged that he had not proved the issuance of the execu-

tion as alleged, but the court held this was an immaterial averment and need not be proved, and that the grantee's title being tainted by fraud, he had no right to say that all other means should be exhausted before disturbing him in his title.

From all these cases we think the principle to be deduced is that the complainant must have a judgment capable of being enforced, that may be made operative *in præsenti*, and if so, he may proceed at once by bill to remove a fraudulent incumbrance out of his way without waiting to issue an execution.

Of what use would it be to issue the execution until the obstacle is removed? Nothing can be done until the question is determined whether the incumbrance is void or valid, and it would be to require a useless and unnecessary act to say that the execution must first issue and be levied before the bill can be entertained.

In the case before us, execution had been issued to the county in which the judgment was obtained within one year from its rendition. It was, therefore, in full force, and execution could be issued to another county at any time within the seven years, when it should be necessary or useful to do so. We think there was no error in the decree in this respect.

The next point we shall notice is, that as appears from the evidence, a large quantity of the lands had been sold by Mrs. Redden before the filing of the bill to various persons who were not made parties to the bill. The lands so sold embraced the most desirable tracts held by Mrs. Redden, and the moneys received therefor had been appropriated by her to various uses and investments. It is insisted by counsel that it was error to decree a sale of the lands so disposed of before the filing of the bill, and in this position he is sustained by the case of Weightman v. Hatch, *supra*.

In that case the fraudulent grantee had conveyed some of the lands to third parties, who were not made defendants, before the bill was filed, and it was held erroneous to decree a sale of the lands so conveyed.

It is apparent that such a decree would not be binding

upon the persons holding the lands, since they are not parties to the bill and acquired their interest before the suit was brought, and that as to them the decree would be productive of nothing but further litigation. This error we regard as substantial in its character, and for this cause the decree must be reversed.

The appellees assign cross-errors as follows:

1. It was error to decree a homestead to Fannie J. Riblett in city lots 1161 and 1162.

2. It was error not to decree that the moneys secured by Mrs. Redden and Mrs. Rowan from the sale of lands, should be paid to complainant on their said judgments.

In support of the first cross-error so assigned it is urged that where there is a fraudulent attempt to place property beyond the reach of creditors, the right to exemption in such property is forfeited.

The homestead exemption provisions of our statute give the debtor an estate, to the extent in value of $1,000, in property owned or rightly possessed by lease or otherwise and occupied by him or her as a residence, and the same statute provides how this estate shall be extinguished. It is not declared that a fraudulent conveyance, such as here alleged, shall work such extinguishment. When a creditor successfully assails a conveyance as fraudulent, his effort restores the property to the debtor, so far as the creditor is concerned, as fully and completely as though the fraudulent conveyance had not been made. The interest which the creditor has in the property is derivative, proceeding from the debtor and depending upon his title.

Hence he can not acquire a right under the debtor's title and at the same time impeach that title. He can not sell under the execution the debtor's title and at the same time deny the debtor's right of homestead on the ground that he has no title. Again, the fraud complained of does not consist in conveying the homestead, for the creditor could not have reached that with his execution had the debtor retained the property. Thompson on Homesteads and Exemptions, Sec. 408, *et seq.;* Bell v. Devore, 96 Ill. 217.

We are of the opinion that upon the facts as conceded in the record, Mrs. Riblett is entitled to an estate of homestead in the city lots, as against the appellees.

As to the second cross-error, it may be said that such relief was not specifically prayed by the bill; nor was there such a case made by the bill as would justify such relief under the general prayer, and we think this assignment not well made.

For the error in ordering a sale of all the lands, when a large part had been sold by the fraudulent grantee before the filing of the bill, to persons who were not made parties to the suit, the decree is reversed and the cause remanded.

Reversed and remanded.

Casey, P. J., took no part in this case.