**Alexander TCHEREPNIN et al.,
Petitioners,**

*v.*

**Hon. William J. CAMPBELL, United
States District Judge, etc.,
Respondent.**

**No. 72–1875.**

United States Court of Appeals,
Seventh Circuit.

Nov. 10, 1972.

A. Bradley Eben, Arnold I. Shure, Solomon Jesmer, Chicago, Ill., for petitioners.

Zeamore A. Ader, Chicago, Ill., for respondents.

Before CUMMINGS, PELL and STEVENS, Circuit Judges.

PER CURIAM.

Terming the matter before the court as a case of first impression, a petition purportedly filed by the plaintiffs of the court below seeks a writ of mandamus or prohibition directed to Senior District Judge William J. Campbell of the Northern District of Illinois with relation to an order denying the motion of plaintiffs to alter or amend the final judgment entered on August 29, 1972 by Judge Campbell in the case of Tcherepnin v. Franz, No. 64 C 1285 in that court.

The present matter is a continuation of the apparently endless litigation arising out of the chaotic financial affairs of the defunct City Savings Association.

The course of the litigation and the history of the salvage efforts of at least some of the creditors of the City Savings Association is set forth in Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); Tcherepnin v. Kirby, 416 F.2d 594 (7th Cir. 1969); and Tcherepnin v. Franz, 461 F.2d 544 (7th Cir. 1972).

For the present purposes, it is sufficient to summarize that which has transpired since the issuance of the mandate in the last mentioned case. While a petition for certiorari was filed, and is now pending, no stay was sought. On August 29, 1972, the respondent before whom the litigation had been pending for several years, on his own motion, without hearing or prior notice, entered a final judgment ordering that the Receivers should disburse from the assets of City Savings Association to each of the members of the preferred creditors group as outlined in *Franz, supra,* 20% of the amount of that depositors' account total. Payment should be made, according to the order, at the earliest possible moment but no later than December 15, 1972. The respondent then relinquished further jurisdiction in the case which was reassigned to Chief Judge Robson.

According to petitioners, the proposed part-payments amount to approximately $3,100,000 which was within some $700,000 of the present total of liquid assets in the receivership. While conceding that there are other assets, which

may be substantial in amount, because of the uncertainty of when the additional assets would assume liquid form, plaintiffs moved to alter or amend the judgment of August 29, 1972. While a question was raised in the motion below regarding whether the payment ordered would be from principal, with possible income tax consequences to the recipients in the event payment was treated by IRS as payment from interest, the principal thrust of the motion was that the payment should be subject to reasonable interim attorneys' fees and expenses for the plaintiffs' attorneys to be determined on petition for the same, objections thereto and hearing prior to disbursement. By amendment to the motion it was prayed in the alternative that 25% of the amount to be disbursed on or before December 15, 1972, be retained by the Receivers pending disposition of a timely petition of attorneys of the plaintiffs for allowance of interim attorneys' fees and expenses. The net effect of this, of course, would be to make a 15% distribution at this time rather than 20%.

When the motion came before Judge Robson for hearing, he referred the motion to respondent for disposition.

On September 26, 1972, respondent heard argument of plaintiffs' counsel in support of the motion and amendment thereto and denied any relief thereunder.

In the petition before this court, the statement was made that no argument in opposition was interposed in the district court. This statement in itself presents a rather novel threshold question. The motion denied by respondent, Judge Campbell, and the petition for mandate in this court both purport to be on behalf of plaintiffs. However, plaintiffs, the preferred creditors, are the ones who would suffer by diminution of the contemplated present distribution in the event relief is granted on the basis of the pending petition before this court. The only way in which they could have objected to the relief sought in the district court would have been to have obtained other attorneys because their own attorneys, who had represented them throughout the litigation, were the ones who were seeking the payment of the fees. It is also of interest to note that the motion in the district court did not apparently seek the payment of additional compensation at this time to the Receivers or their attorneys, fees which would ordinarily be categorized as administration expenses.

In the petition before us, and in its supporting exhibits, the services rendered for plaintiffs by their attorneys are detailed. It would seem a fair assumption in the long, litigious road over which the plaintiffs have traveled that their arrival at the position of preferred creditors has been achieved by the assiduous efforts of their counsel. To emphasize this aspect of the matter, it appears from the file that a substantial group of non-preferred depositors may receive nothing when the administration is completed. At this juncture, however, we are not concerned with an analysis of the value of their services or whether they are entitled to any further fees at this time.[1]

All that we are presently concerned with is whether or not action should be taken which would have the effect of staying a part of the distribution ordered by the final judgment of August 29, 1972, so that the attorneys for the plaintiffs may process a petition for interim attorneys' fees.

1. Heretofore there has been paid pursuant to court order, $169,000 to the Receivers, $169,500 to the attorneys for the Receivers and $150,000 to attorneys for the plaintiffs. None of these payments were indicated to be final payments. Prior to the appointment of the Federal Receivers, liquidators of City Savings Association had disbursed approximately $400,000 as attorneys' fees without court approval. This former disbursement concerned other attorneys and is not directly involved in the present matter. As a matter of fact, the validity of some of the prior payments is under challenge by the Receivers.

It is recognized in point of realistic practice that when a judge is a respondent in mandamus or prohibition proceedings, he often is represented in such proceedings by counsel for the party in whose favor he has ruled. Here, however, we have the anomalous situation in which it is very probably a fair assumption that the prevailing parties (the plaintiffs to whom 20% has been ordered) desire the forthwith payment of 100% of the distribution ordered in the judgment of August 29, 1972. In that position they are in conflict with that taken by their attorneys who are opposing a 100% distribution at this time. It is not unreasonable to assume that there would be no formal opposition, at least from the plaintiffs, in this court to the granting of the motion to grant the writ requested by the plaintiffs unless the plaintiffs should retain other counsel to represent the respondent in the proceedings.

If we were to proceed to the issuance of a rule to show cause, with a temporary stay of the distribution or at least a stay of 25% of the distribution, it would be, in our opinion, at least advisable, if not mandatory, that we accord the respondent herein the privilege, if he so desired, to appoint counsel to represent him in this matter, said counsel to be reimbursed for legal fees and expenses on a per diem basis from the assets of the bankruptcy estate.

The question is whether it is necessary to reach this point. In our opinion, it is not.

Counsel for the plaintiffs point out their basis for entitlement to fees is supported by cases of the United States Supreme Court, one of the latest being Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). We do not disagree with this line of authority nor its interpretation by the counsel for plaintiffs. As a matter of fact, the respondent did not disagree. The district court's position was not that counsel might not be entitled to additional fees over the $150,000 previously paid (which amount is designated as a token payment by counsel for the plaintiffs) but rather related to the timing of such additional payment.

In the judgment of August 29, 1972, the respondent purportedly made a realistic analysis of the ultimate realization from other non-liquid assets. He placed that as follows: $3.5 million from the Apple Orchard subdivision; $2 million from the sale of Howie in the Hills subdivision; and approximately $500,000 from mortgages. These amounts are substantially less than the face values involved. As the district court said in denying the motion to amend or alter the judgment of August 29, 1972, "there is ample left in this estate to fully and adequately compensate" the attorneys "for the excellent work that they did in bringing this case to this court, which I have alluded to time and again as requiring compensation to them and as being worth [sic] of compensation." The district court, however, reminded the parties that he had said at the time that he had given a previous interim allowance that there would be no further allowance of fees until the depositors received something and further that that was still his position.

Counsel for plaintiffs contend vigorously that this action is unfair to them because of the extensive drain on their time and talents over a number of years which will not be further compensated until troublesome title problems are resolved in connection with the sale of the real estate in the liquidation. They may well be correct in their claim of unfairness and we might or might not have decided the issue before the respondent in the manner he did. Nevertheless, it is obvious that the court was to a considerable extent balancing equities and was cognizant of the large number of depositors, many of whom could probably not afford the loss of their savings and who had been without any return for many years. Although there may be some arguable uncertainty as to the exact amount that will be realized upon the liquidation of City Savings' assets, we do not find sufficient reason to upset

the district court's finding that an ample amount will remain to compensate counsel fully and adequately. In sum, we cannot say that the action of the district court was such an abuse of his equitable discretion as to require us to utilize the extraordinary remedies of prohibition or mandamus.

Accordingly, without further proceedings, the petition for a writ of mandamus or prohibition is denied. Our action in no way precludes the petitioners from proceeding by way of petition in the district court for the allowance of interim fees to be paid out of other assets as said assets become available for utilization, nor do we intend to express our opinion as to the entitlement, in such event, to further fees.

Denied.